**IN THE UNITED STATES DISTRICT COURT**
**FORT THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **KLUMBA.UA, LLC**<br><br>*Plaintiff,*<br><br>v.<br><br>**KLUMBA.COM, a res,**<br><br>*Defendant.* | **CASE NO. 1:15-cv-00760** |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1

## TABLE OF CONTENTS

I. FACTS ................................................................................................................................ 4

II. STANDARD OF REVIEW ............................................................................................. 10

III. ARGUMENT .................................................................................................................... 11

IV. PRAYER FOR RELIEF .................................................................................................. 14

## TABLE OF AUTHORITIES

**CASES**

H. Jay Spiegel & Associates, P.C. v. Spiegel, 6523 F. Supp. 2d 639 (E.D. Va 2009 aff'd 400 F. App'x 757 (4th Cir. 2010) …………………………………………………………………...10

Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253 (4th Cir. 1991) ….…………………...……10

Caesars World, Inc., v. CaesarsPalace.com, 112 F.Supp.2d 505 (E.D.Va. Aug. 25, 2000)…… 11, 13, 14

Saurikit, LLC v. cydia.com, No. 1:11CV888 JCC/JFA, 2012 WL 1344392 (E.D. Va. Apr. 17, 2012) ……………………………………………………………………………………………… 13

**STATUTES/RULES**

Fed. R. Civ. P. 56(c)……………………………………………………………….……………. 10

FRCP SUPP AMC Rule C. ……………………………………………………………………. 14

# I. FACTS

1. Plaintiff, Klumba.UA, LLC ("LLC") is a limited liability company organized under the laws of Ukraine and owned equally (25% each) by four individuals: Aleksey Ivankin, Andrey Khorsev, Dmytro Dubyna, and Natalia Zueva.

2. Plaintiff brought this action under Anti-Cybersquatting Consumer Protection Act (ACPA) to recover the ownership and control of the domain name <klumba.com>, which was usurped by one of the plaintiff's members and then sold/transferred to a third party.

3. In 2010, the individual members of the plaintiff LLC entered into a partnership agreement, agreeing to form the plaintiff LLC, transfer all "Klumba" domains and marks to the LLC, jointly develop and sell advertisements on the websites. **Exhibit 1** (Memorandum of Partnership). The parties to the memorandum were Ivankin/Khorsev as Party 1 and Dubyna/Zueva as Party 2. **Id.**

4. Since 2010, Plaintiff developed and operated a website using domains <klumba.ua>, <klumba.ru>, <klumba.pl> and multiple other domains bearing <Klumba> mark, selling advertisements to Google and providing information primarily to the Ukrainian and Russian-speaking public. The domain extensions ".ua"; ".ru" and ".pl" are the internet country codes top-level domains (domain extensions) for Ukraine, Russia and Poland.

5. In 2012, Plaintiff LLC purchased, registered and operated the domain name <klumba.com>, which was initially designed to mirror the domain ending .ua and eventually be used as the primary website for the Plaintiff's e-commerce.

6. The domain name <klumba.com>, which is the subject of this action, was purchased by the plaintiff LLC, through multiple discussions via e-mail and Skype communications between the Plaintiff's members, namely Aleksey Ivankin, Andrey Khorsev, and Dmytro Dubyna. *See* **Exhibit 2** (Correspondence Regarding Purchase of the Domain 2010-2012.)

7. As shown in the WHOIS records from the 2012, immediately after the purchase, the domain name <klumba.com> was registered under the name of the Plaintiff, Klumba.UA, LLC. *See* **Exhibit 3** (WHOIS 2012).

8. In the fall of 2012, two members of the plaintiff LLC, Dubyna and Khorsev travelled to Silicon Valley, California to hold discussions with entrepreneurs and investors about a new project. **Exhibit 4** (Dubyna Dep. at 46).

9. In March of 2013, members of the LLC entered into an agreement in Mountain View, California, stating that the parties "sell advertising" to Google, Inc. and agreeing to receive proceeds from Google, the primary source of their income, in the US and split the proceeds into the US bank accounts, representing the shares of Ivankin/Khorsev and Dubyna/Zueva. **Exhibit 4** (Dubyna Dep. at 98). **Exhibit 5** (Contract w. 908/Dubyna). The agreement was signed by Khorsev as CEO of US company 908, Inc. representing the interest of Ivankin/Khorsev and by Mr. Dubyna representing the interest of Dubyna/Zueva. **Exhibit 4** (Dubyna Dep. at 100).

10. In the fall of 2013, the relationship between the members deteriorated and arguments ensued when it was determined by Ivankin/Khorsev that Party 2 to the Memorandum (Dubyna/Zueva) failed to transfer to the LLC the domain <klumba.ru> and that Mr.

Dubyna had changed the domain <klumba.com> registrant record from the plaintiff LLC to Dubyna's personal information. **Exhibit 6** (Khorsev Letter).

11. In the fall of September 2013, Dubyna/Zueva engaged two individuals – Mr. Trofimenko and Mr. Mishalov to "negotiate" with Ivankin/Khorsev and to buy Dubyna's and Zueva's shares in the enterprise. **Exhibit 4** (Dubyna Dep. at 11).

12. Mishalov, according to Mr. Dubyna, is a prominent "IT Businessman" and "quite a big fish." **Exhibit 4** (Dubyna Dep. at 12). According to Ms. Zueva and Mr. Dubyna, Mr. Mishalov was a son of prominent Ukrainian developer, who eventually became Secretary of City Council in Dnipro, Ukraine and was later removed due to corruption scandals involving his father. **Exhibit 7** (Zueva Dep. at 148); **Exhibit 4** (Dubyna Dep. at 36-37).

13. Mr. Mishalov and Mr. Trofimenko became involved in the dispute in Ukraine with a goal of acquiring shares of Mr. Dubyna and Ms. Zueva. **Exhibit 7** (Zueva Dep. at 146-147). Mr. Dubyna and Ms. Zueva gave powers of attorney to each of those individuals authorizing them to transfer/sell their shares in the LLC, execute any documents and delegate duties. **Exhibit 4** (Dubyna Dep. at 23-27). Ms. Zueva also claims to have signed "about like 20 powers of attorney to different people" during that period. **Exhibit 7** (Zueva Dep. at 56).

14. During the "negotiations", Mr. Mishalov assaulted and beat Mr. Khorsev's lawyer. **Exhibit 4** (Dubyna Dep. at 38). Subsequently, the offices of the plaintiff were unlawfully raided and their computers/servers were seized. **Exhibit 7** (Zueva Dep. at 67).

15. Shortly thereafter, a lawsuit was filed in Ukraine on behalf of Mr. Dubyna naming his wife Ms. Zueva and the plaintiff LLC as defendants, claiming that Mr. Dubyna was unaware of the terms of Ms. Zueva's transfer of the trademarks to the LLC according to the partnership agreement of 2010. **Exhibit 7** (Zueva Dep. at 32).

16. In the initial proceedings in connection with Dubyna's lawsuit in Ukraine, the LLC was purportedly represented by a fake director by the name "Ryabokobila", who as admitted by Ms. Zueva, consented to the judgment on behalf of the LLC, causing the lower court in Ukraine issue a decision[1] transferring the registration of "КЛУМБА" trademarks and Ukrainian domain back to Zueva. **Exhibit 7** (Zueva Dep. at 55-61).

17. Thus, by the end of November of 2013, Mr. Mishalov and Mr. Trofimenko, the two influential individuals, or "big fish", as stated by Mr. Dubyna, succeeded in seizing control of the marks and the Ukrainian domain <klumba.ua> as planned.

18. Immediately thereafter, Zueva transferred the two trademark registrations and the <.ua> domain to two other individuals. **Exhibit 7** (Zueva Dep. at 64-65).

19. At the same time, Mr. Dubyna transferred the ownership of domain <klumba.com> (the *res*) to one "Klumba.com, LTD". **Exhibit 8** (WHOIS Record in 2015).

20. After the default judgment was entered in this case, on April 13, 2016, Ms. Zueva made a public post on Facebook stating that "neither one of us with Dima (Dubyna) is the owner of the domain. But we (Zueva and Dubyna) know that the owner did not participate in the court (in the US)." **Exhibit 9** (Zueva Facebook Post).

---

[1] Eventually, this decision of the lower court, achieved through fabrications, was overturned by the decision of the Supreme Court of Ukraine on June 22, 2017.

21. Both Dubyna and Zueva are now claiming that this post by Zueva was a lie, designed to mislead their adversaries, i.e. the plaintiff LLC. **Exhibit 7** (Zueva Dep. at 175).**;** **Exhibit 4** (Dubyna Dep. at 176-177).

22. On April 29, 2016, Mr. Dubyna by counsel filed a Motion to Set Aside the Default Judgment in this matter claiming that Mr. Dubyna was the owner of the domain. **Dkt # 34 & 36.** In support of their motion, Mr. Dubyna provided an affidavit filed with this Court, stating that Mr. Dubyna had "no access to or affiliation" with "klumba.com.ltd@gmail.com", which was the registrant e-mail at the time this lawsuit was filed. **Dkt # 36, Ex. 1, p2, ¶11** (Decl. of Dmytro Dubyna).

23. At the time of the inception of this case, the domain registrar's records showed that the domain name was registered to one "Klumba.com, LTD". An e-mail address and physical address were properly entered and listed with the registrar and reflected on WHOIS records. **Exhibit 8.**

24. At the hearings and declarations filed in support of their Motion to Set Aside, Mr. Dubyna and his counsel repeatedly represented to this Court that Mr. Dubyna was unaware of why and how the domain name got registered to "Klumba.com, LTD".[2]

25. Relying on the representations by Mr. Dubyna and his counsel, Judge Nachmanoff stated in the Report and Recommendations filed in connection with the Motion to Set Aside that "*Mr. Dubyna claimed that he had no connection or knowledge of Klumba.com, LTD and has never used the physical or e-mail address associated with that entity.*" [Emphasis added]. **Dkt # 47 at 3**.

---

[2] At the time, Mr. Dubyna was represented by another counsel, who is no longer involved in this matter.

26. However, as the discovery in this case proceeded, Mr. Dubyna changed the story. In his responses to the interrogatories and to the deposition questions, Mr. Dubyna methodically and in details laid out how the domain name was registered to Klumba.com, LTD:

> [M]r. Dubyna and Ms. Zueva decided to create a new business venture and transfer assets such as Klumba Trademark, Klumba.UA Domain and klumba.com Domain to the new business venture. In order to do so and to reflect transfer of klumba.com asset to the new venture, both Mr. Dubyna and Ms. Zueva agreed to change klumba.com Domain registration information to new neutral email, not previously owned by either of them. With that purpose, Mr. Dubyna requested a neutral third party, Mr. Viacheslav Cherkashyn, who acted as an escrow agent, to anonymize registration information of the Domain while new joint venture details were being finalized. Mr. Cherkashin registered new information for the Domain, including listing Klumba.com, LTD, a non-existing entity, as interim information for the Domain owner."

**Exhibit 10** (Dubyna resp. to Int. # 5).

27. While claiming the ownership of the domain in question and filing the answer in this case, Mr. Dubyna and Ms. Zueva have also refused to answer multiple discovery questions in this matter, objecting that both Mr. Dubyna and Ms. Zueva were third parties and information about Dubyna and Zueva "are not within Domain's possession, custody, or control." **Exhibit 11** (Dubyna resp. to Int. # 2).

28. Dubyna and Zueva further objected generally to all of the discovery requests stating:

> Defendant objects to Definition No. 1 of Plaintiff's Request regarding ""You", "Your," and "Defendant" as used herein to refer to Dubyna and/or Zueva or any other party asserting claims for the res in question." Neither Mr. Dubyna nor Ms. Zueva in their individual capacity are parties to this litigation nor are

9

>subject to jurisdiction of this Court. Mr. Dubyna and Ms. Zueva are individual third parties who are not within Defendant's possession, custody, or control.
>
>**Exhibit 12** (Dubyna resp. to Ints. page 1-2).

29. At the onset of each deposition, counsel for Dubyna and Zueva stated on the record that Dubyna and Zueva are not the parties to this case and they had to be subpoenaed for the depositions but appeared voluntarily as "a third-party witness." **Exhibit 4** (Dubyna Dep. at 6); **Exhibit 7** (Zueva Dep. at 5).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material act and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." H. Jay Spiegel & Associates, P.C. v. Spiegel, 6523 F. Supp. 2d 639, 643 (E.D. Va 2009 aff'd 400 F. App'x 757 (4th Cir. 2010). An opposing party cannot simply rely upon allegations or denials, but it must "set forth specific facts showing that there is a genuine issue for trial." Anderson at 248. A "mere scintilla" pr evidence is not enough to overcome a properly supported motion. Id. at 248-52. In reviewing a motion for summary judgment, the Court must "draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III.  ARGUMENT

"The answer should have been filed on behalf of claimant or claimants seeking to assert their interests in the domain name." Caesars World, Inc., v. CaesarsPalace.com, 112 F.Supp.2d 505, 508–09 (E.D.Va. Aug. 25, 2000). "As an inanimate thing, the domain name could not and did not hire attorneys to file an answer." Id.

As it became apparent from the evidence and through the discovery, neither Mr. Dubyna nor Ms. Zueva had standing to appear or file answer on behalf of the *res* in this case. Admittedly, at the time when the Complaint was filed in this case, neither Dubyna nor Zueva owned "klumba" marks in the United States, Ukraine, or anywhere in the world. It is undisputed that, at the time of the Complaint, the registrar database indicated that the *res* was registered to an entity named Klumba.com, LTD, from which Mr. Dubyna had initially distanced himself. In effort to set aside the default judgment, Mr. Dubyna first presented to the Court that Mr. Dubyna was unaware of how and why the domain name was registered to Klumba.com, LTD. This Court relied on Mr. Dubyna's representations. After the judgment was set aside, Judge Nachmanoff ordered the parties to file a supplementary brief specifically addressing the issue of transferring the domain back to Klumba.com, LTD, in light of allegations that the domain name was registered to an unknown entity. Now, Mr. Dubyna claims that the domain name was transferred to an escrow, who in turn registered it to the "non-existent" entity.

At the time of the Motion to Set Aside, Mr. Dubyna found it more suitable to claim that he had no idea about Klumba.com, LTD. However, now that he needs to assert ownership of the domain, Mr. Dubyna represents that the domain was intentionally registered to Klumba.com, LTD. Mr. Dubyna needs to prove his ownership of the domain more now than before, because during the discovery, it became evident that Mr. Dubyna and Ms. Zueva had sold the domain and the trademarks to other persons and no longer have ownership interest in the same. Testimonies

11

of Mr. Dubyna and Ms. Zueva are marred with misrepresentations and lies. All along this process, Mr. Dubyna had been representing to the Court that trademarks in Ukraine were licensed to Ms. Zueva. However, at the deposition, Ms. Zueva stated that no such licenses exist, other than her oral discussions with her claimed friend. Ms. Zueva further admitted that she did not even have an oral discussion about licensing the second trademark with the current owner of the mark in Ukraine.

While the ownership of the trademarks in Ukraine do not affect the outcome of this matter under ACPA, these repeated misrepresentations demonstrate the inconsistencies in Mr. Dubyna's and Ms. Zueva's claims for ownership of the domain or trademarks. The only two objective pieces of evidence demonstrating the true ownership of the domain in question are registrar records and Ms. Zueva's Facebook post, which was made publicly and not as part of this litigation process. The Facebook post was not produced by the defense in the discovery process, but rather revealed by the plaintiff's counsel. Now, to beef up their claim of ownership of the domain, Ms. Zueva claims that she lied on Facebook and Mr. Dubyna changes his story about the registrar records.

It is clear from the facts above that, at the time of the dispute with Ivankin/Khorsev, Mr. Dubyna and Ms. Zueva had sold their interests to two goons (or as Mr. Dubyna put it "big fish"), who through illegal actions, fabrications, assault and unlawful seizures, obtained the control of all of the assets of the plaintiff LLC, including the domain name in question. Ms. Zueva and Mr. Dubyna admittedly gave Mr. Mishalov and Mr. Trofimenko power of attorneys authorizing them to act on their behalf, buy/sell/or dispose of their shares in the plaintiff LLC and otherwise act as needed. It took a little over a month for the two raiders to obtain the assets of the LLC including

the domain in question. None of the objective records indicate that Mr. Dubyna or Ms. Zueva have any ownership interest in this domain.

This Court had previously addressed a similar motion for summary judgment filed by the plaintiff in Saurikit, who similarly argued that there was no Answer on file by the a "claimant," as required under Caesar's World case. Saurikit, LLC v. cydia.com, No. 1:11CV888 JCC/JFA, 2012 WL 1344392 (E.D. Va. Apr. 17, 2012). However, the Saurikit Court distinguished the case from Caesar's stating:

> Here, unlike the defendants in Caesars World, Cykon has continuously taken the steps required of it in order to come forward and argue its ownership interest in the res. Cykon has engaged Plaintiff in the discovery process and settlement negotiations. And, unlike Caesars World, there is no question from the face of the pleadings that Cykon is the owner of the domain name and is a claimant in this case. The Court confirmed this when it addressed the motion to set aside the entry of default and ordered Cykon to meet certain conditions regarding the domain name. Thus, nothing in Caesars World compels a rule that Cykon present its pleadings or sign its Answer any differently than it did in this case.
>
> Saurikit, LLC v. cydia.com, No. 1:11CV888 JCC/JFA, 2012 WL 1344392, at *3 (E.D. Va. Apr. 17, 2012) (citations omitted.)

The facts in this case, however, are analogous to Caesars World case. In the instant case, the only assertion of ownership interest was by Mr. Dubyna's sham affidavit filed with this Court, where among other things he claimed that the registrant information of the domain was incorrect and unknown to him. This affidavit can no longer be relied upon, because it contains representations obviously inconsistent with Mr. Dubyna's later testimony in this case. This case is further analogous to Caesars World in that, similar to Caesars World, Mr. Dubyna purposefully refused to answer multiple discovery requests specifically citing that he was not a party to the case. As Judge Brinkema stated in Caesars World, the ACPA does not set procedures for claimants in an *in rem* action.

Caesars World 112 F.Supp.2d 505 at 508–09. Therefore, the Court held that general procedure governing in rem actions in admiralty applied to ACPA. Id.

In *in rem* actions in admiralty, the statement of right or interest must describe the interest in the property that supports the person's demand for its restitution or right to defend the action. FRCP SUPP AMC Rule C. In the instant case, Mr. Dubyna's only statement supporting his right to defend the action was his affidavit filed with the Court in support of his motion to set aside. It is now clear from Mr. Dubyna's testimony and other evidence discovered that it was a sham affidavit and neither Dubyna nor Zueva had standing to file answer.

## IV. PRAYER FOR RELIEF

For the foregoing reasons, no answer having been filed by a "claimant" to the *res* and no genuine issues of material facts remaining in this matter, Plaintiff is entitled to summary judgment.

Respectfully submitted this November 27, 2017.

By: ___/s/_____
Ismail T. Shahtakhtinski, Esq.
Attorney for Plaintiff, KLUMBA.UA, LLC
VSB # 75409
I.S. Law Firm, PLLC
3930 Walnut Street, Suite 200
Fairfax, Virginia 22030
T: (703) 527-1779
F: (703) 778-0369
ismail@islawfirm.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 27, 2017, the foregoing was filed with the Court's e-file system, which in turn electronically served all parties.

              By: /s/ _____.
                 Ismail T. Shahtakhtinski, Esq.
                 VSB # 75409
                 I.S. Law Firm, PLLC
                 3930 Walnut Street, Suite 200
                 Fairfax, Virginia 22030
                 T: (703) 527-1779
                 F: (703) 778-0369
                 ismail@islawfirm.com