**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **KLUMBA.UA. LLC,**<br><br>      **Plaintiff,**<br><br> - against –<br><br>**KLUMBA.COM, a res,**<br><br>      **Defendant.** | **Civil Action No. 1:15-cv-00760-GBL-MSN** |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Robert Powers, Esq.
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
Telephone: (703) 520-1326
Facsimile: (703) 828-0205
Email: rpowers@mcplegal.com
*Counsel for Defendant*

Maria Temkin, Esq.
TEMKIN & ASSOCIATES, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 939-4181
Facsimile: (215) 914-6975
Email: maria@temkinlegal.com
*Pro Hac Vice Counsel for Defendant (Approved)*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     PLAINTIFF DOES NOT DISPUTE, AND THEREFORE,
        CONCEDES THAT PLAINTIFF HAS NO STANDING TO
        BRING ITS ACPA CLAIM ............................................................................ 4

III.    PLAINTIFF DOES NOT IDENTIFY ANY MATERIAL
        DISPUTE OF FACT AND THE ALLEGED FACTS IT
        HAS SUBMITTED SHOULD BE STRICKEN ............................................. 5

IV.     PLAINTIFF CANNOT, AS A MATTER OF LAW,
        ESTABLISH THAT THE DEFENDANT DOMAIN IS LIABLE FOR
        CYBERSQUATTING UNDER THE ACPA ............................................... 11

        A. Plaintiff continues to fail to establish evidence that it had common law
           trademark rights in the United States............................................................. 12

        B. Plaintiff continues to fail to establish evidence that Defendant
           acted in bad faith............................................................................................. 13

V.      PLAINTIFF DOES NOT DISPUTE, AND THEREFORE,
        CONCEDES THAT SHOULD DEFENDANT PREVAIL,
        DEFENDANT IS ENTITLED TO ITS REASONABLE ATTORNEYS'
        FEES AND COSTS AGAINST PLAINTIFF, KHORSEV, AND
        IVANKIN, JOINTLY AND SEVERALLY ................................................. 16

VI.     CONCLUSION ............................................................................................. 17

VII.    CERTIFICATE OF SERVICE...................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*,
No. 13-cv-8458, 2015 WL 5311085, at *51-52 (C.D. Cal. Sept. 10, 2015) ........................ 13

*Alvarez v. Lynch*,
828 F.3d 288, 295 (4th Cir. 2016) ................................................................................. 4

*Anglinmatumona v. Micron Corp.*,
No. 1:11-CV-572 AJT/TRJ, 2012 WL 1999489 (E.D. Va. June 4, 2012) ........................... 5

*Brand v. N.C. Dep't of Crime Control & Pub. Safety*,
352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) .................................................................... 4

*Ford Motor Co. v. Greatdomains.Com, Inc.*,
177 F. Supp. 2d 635, 643 (E.D. Mich. 2001) ................................................................. 13

*Gioconda Law Grp. PLLC v. Kenzie*,
941 F. Supp. 2d 424, 431 (S.D.N.Y. 2013) .................................................................... 13

*Internat'l Bancorp, LLC v. Societe des Bains de Mer*,
329 F.3d 359, 363, 370 (4th Cir. 2003) ........................................................................ 12

*Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*,
No. CIV.A 2:07CV530, 2009 WL 2606254 ..................................................................... 5

*Lamparello v. Falwell*,
420 F.3d 309, 320 (4th Cir. 2005) ............................................................................... 13

*Lopez v. BigCommerce, Inc.*,
No. 16-CV-8970 (JPO), 2017 WL 3278932, at *3 (S.D.N.Y. Aug. 1, 2017),
appeal dismissed (Oct. 25, 2017) ................................................................................ 12

*Nzabandora v. Univ. of Virginia*,
No. 3:17-CV-00003, 2017 WL 4798920, at *5 (W.D. Va. Oct. 24, 2017) ........................... 4

*Oliver v. Baity*,
208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) .................................................................... 4

*Rescuecom Corp. v. Google Inc.*,
562 F.3d 123, 129 (2d Cir. 2009) ................................................................................ 12

*Russell v. Absolute Collection Servs., Inc.*,
763 F.3d 385, 396 (4th Cir. 2014) ................................................................................ 9

*So. Grouts & Mortars, Inc. v. 3M Co.*,
575 F.3d 1235, 1243 (11th Cir. 2009) ........................................................................11

*Sook Yoon v. Sebelius*,
481 F. App'x 848, 849 (4th Cir. 2012) ........................................................................13

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 1125(d) .............................................................................................*passim*

Virginia Code Va. Code § 13.1-1042 et. seq. ..............................................................*2*

Federal Rule of Civil Procedure Rule 56 ......................................................................5

Federal Rule of Civil Procedure Rule 37 ......................................................................9

Pursuant to Rule 56 of the Federal Rules of Civil Procedure (collectively, "<u>FRCP</u>", each a "<u>Rule</u>") and Local Civil Rule 56, Defendant Klumba.com, *a res* ("<u>Defendant</u>" or the "<u>Domain</u>"), by and through its undersigned counsel, submits this Reply in Support of Defendant's Motion for Summary Judgment [DE 107-109] ("<u>Motion</u>"). For the reasons set forth below, Defendant is entitled to judgment as a matter of law in its favor and to dismissal of Plaintiff's Amended Complaint [DE 14] in its entirety.

## I.       PRELIMINARY STATEMENT

Plaintiff Klumba.UA LLC[1] ("<u>Plaintiff</u>" or the "<u>LLC</u>") is trying to cram a square peg into a round hole – turn an allegation of purported "embezzlement" or "conversion" of the Domain, under Ukrainian law, by its former member, Dubyna, located in Ukraine, into a single claim under the Anticybersquatting Consumer Protection Act (codified at 15 U.S.C. § 1125(d) *et. seq.*, the "<u>ACPA</u>"), as it relates to alleged trademark infringement under the Lanham Act (codified at 15 U.S.C §§ 1051 et seq., the "<u>Lanham Act</u>").

As an initial matter, Plaintiff does not address in its Opposition to Defendant's Motion [DE 111] ("<u>Opposition</u>"), and therefore, appears to concede to Defendant's argument that Plaintiff has no standing to bring its claim under the ACPA. As discussed in Defendant's Memorandum in Support of its Motion [DE 108] ("<u>Memo</u>"), Plaintiff continues to fail to address or identify any authority in its Opposition, or otherwise, which indicates that its Members unanimously agreed to file the instant action. In fact, Dubyna and Zueva, the Domain's beneficial owners, expressly deny providing consent for the LLC to bring this instant action.

---

[1] Plaintiff is a limited liability company organized in and under the laws of the sovereign state of Ukraine on or about September 30, 2010 by four (4) members: Dmitry Dubyna ("<u>Dubyna</u>"); Dubyna's spouse, Natalia Zueva ("<u>Zueva</u>"); Andrey Khorsev ("<u>Khorsev</u>") and Aleksey Ivankin ("<u>Ivankin</u>") (collectively, the "<u>Members</u>").

Memo, pp. 14-16. Even if this action had any merit—which Defendant maintains it does not—this matter should have been brought by Ivankin and/or Khorsev in their individual capacities as Members of the LLC in the form of a derivative action. *Id.*; *see also, e.g.*, Virginia Code Va. Code § 13.1-1042 *et. seq*. This failure alone permits the Court to grant Defendant's Motion without needing to reach the merits of any of Plaintiff's arguments.

Further, as first indicated in Defendant's Memorandum in Support of its Motion to Dismiss [DE 62], the only arguable modicum of good faith originally supporting the filing of this matter by Plaintiff in this Court, or any U.S. court, was the allegation by Plaintiff that this Court had *in rem* jurisdiction over the matter in that the Domain "had its situs in this judicial district in that the [D]omain name registry and registrar were located in Virginia, the [D]omain name violated [P]laintiff's rights to [its t]rademark as protected under the ACPA [sic], and [P]laintiff is not able to obtain *in personam* jurisdiction over [a d]efendant". [DE 14] at ¶ 5. Plaintiff is essentially a defunct entity being used a vehicle by Khorsev and Ivankin in an attempt to coerce payment from Dubyna and Zueva in exchange for release of the Domain presently held in escrow [DE 55]. Defendant contends that Ivankin and Khorsev intentionally did not bring this matter derivatively solely in an attempt to shield themselves from any personal exposure in the event Defendant was awarded its reasonable attorney fees under the ACPA or this Court's inherent authority to impose sanctions.

The undisputed facts in this case, discussed *supra* and in Defendant's Memo, clearly and unequivocally show that, *inter alia*, at the time of filing its Amended Complaint [DE 14], (i) Plaintiff knowingly had no ownership rights in the Domain at any time; (ii) Plaintiff had no common law trademark rights, and continues to have no common law trademark rights, in the United States in an unregistered trademark, KLUMBA (the "Mark"); and (iii) Defendant lacked

2

the requisite, specific bad faith intent under the ACPA. Plaintiff has raised no genuine issues of material fact and simply has failed to meet its burden to support its ACPA claim. Defendant is therefore entitled to summary judgment on Plaintiff's single claim arising under the ACPA.

First, the undisputed facts in this case show that Plaintiff never had ownership of the Domain at any point; rather, Plaintiff temporarily obtained possession of the Domain, which was expressly not authorized by the owners of the Domain, Zueva and Dubyna, through illicit means by two of Plaintiff's members, Khorsev and Ivankin, the same two parties who initiated the instant action, without the consent of all Members of Plaintiff. Dubyna paid for the Domain from his own funds and then transferred the Domain to his personal account in January 2013 at the request of Plaintiff. Plaintiff specifically and unambiguously identified that it did not want the Domain in any capacity, including, *inter alia*, in its possession. Dubyna, upon transfer to his personal account, continued to use it in conjunction with the Ukrainian Domain, which was returned to Dubyna's spouse, Zueva, through court decisions in Ukraine in November 2013.

Undoubtedly unsatisfied with the outcome of numerous court decisions in Ukraine, Khorsev and Ivankin, through the guise of Plaintiff, continue to insist that the decisions were wrong, corrupt, and the Domain and the Ukrainian Domain should belong to Plaintiff. In support of this position, Plaintiff inserts a jumble of facts completely irrelevant to the transfer of the registration of the Domain, such as the purported interest of third parties in buying the membership rights of Dubyna and Zueva in the LLC. However, if the Court ignores these irrelevant issues and attacks, it will be clear beyond any genuine issue of material fact that there is not even a scintilla of evidence in the record to prevent summary judgment on the ACPA claim in favor of Defendant.

Second, even if the Court were to reach the remaining arguments, Plaintiff does not dispute that at no time was the Mark specifically marketed or known to U.S. customers. Plaintiff's novel approach to law that placing a Google, Inc. ("Google"), code to advertise products of others on the Ukrainian Domain's web space, with the Domain pointing to the Ukrainian Domain, constitutes "use in commerce" attempts to stand trademark law on its head: specifically, the LLC had to advertise its own trademark to U.S. consumers through Google, or otherwise, to achieve that result – not the other way around. Thus, no common law trademark rights were ever acquired by the LLC in the United States.

Third, even the Court were to reach the final argument, Plaintiff simply cannot show that Defendant, vis-à-vis, its registrant, implicitly Dubyna and/or Zueva, acted with bad faith intent to profit from any purported trademark of Plaintiff. For these reasons, discussed more fully *supra*, Defendant is entitled to judgment as a matter of law in its favor and to dismissal of Plaintiff's Amended Complaint [DE 14] in its entirety.

## II.     PLAINTIFF DOES NOT DISPUTE, AND THEREFORE, CONCEDES THAT PLAINTIFF HAS NO STANDING TO BRING ITS ACPA CLAIM

Plaintiff does not dispute, or otherwise address in its Opposition, Defendant's argument in its Memo that Plaintiff has no standing to bring its claim under the ACPA. Memo, pp. 14-16. Plaintiff therefore concedes the issue. *See Nzabandora v. Univ. of Virginia*, No. 3:17-CV-00003, 2017 WL 4798920, at *5 (W.D. Va. Oct. 24, 2017); *see also Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring opponent's argument is "an outright failure to join in the adversarial process [that] ordinarily result[s] in waiver"); *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue."); *Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) ("By failing to respond, Plaintiff concedes that he has not

stated a hostile work environment claim."). This alone permits the Court to grant Defendant's

Motion without needing to reach the merits of any of Plaintiff's arguments.

### III.     PLAINTIFF DOES NOT IDENTIFY ANY _MATERIAL_ DISPUTE OF FACT AND THE ALLEGED FACTS IT HAS SUBMITTED SHOULD BE STRICKEN

Should this Court _sua sponte_ rule that Plaintiff does have standing to bring the instant

action, Defendant is entitled to summary judgment because Plaintiff has failed to properly rebut

any _material_ fact and improperly relies heavily on inadmissible or otherwise improper evidence

in its Opposition. The deposition testimony, email correspondences, and affidavits of third

parties not part of the litigation, _inter alia_, are either inadmissible as evidence, were never

provided in discovery in this action by the discovery end date, or are otherwise unreliable.

Each paragraph of Defendant's Statement of Material Facts in Defendant's Memo (the

"Facts"), unless otherwise properly disputed by citation to the record in this matter or otherwise

properly addressed, must be taken as admitted by Plaintiff. Fed. R. Civ. P. 56(e) (court may

consider fact undisputed for purposes of the [M]otion where nonmoving party "fails to properly

address another party's assertion of fact"; Local Civ. R. 56(B) ("facts identified by the moving

party are admitted, unless such a fact is controverted in the statement of genuine issues filed in

opposition); _see e.g., Anglinmatumona v. Micron Corp._, No. 1:11-CV-572 AJT/TRJ, 2012 WL

1999489 (E.D. Va. June 4, 2012) (movant's statement of facts deemed admitted where opposing

party failed to cite admissible evidence in her objections thereto); _Lake Wright Hosp., LLC v._

_Holiday Hosp. Franchising, Inc._, No. CIV.A 2:07CV530, 2009 WL 2606254 (E.D. Va. Aug. 20,

2009) (upholding decision adopting as uncontested movant's statement of facts where plaintiff's

counterstatement of facts contained numerous paragraphs that were either argumentative or

"factual contentions unsupported by citations to record evidence," as well as misrepresentations).

Plaintiff's Response to Defendant's Facts ("Response") does not include any objection at all to 19 of the 50 paragraphs in Defendant's Facts, and those paragraphs are thus indisputably admitted[2]. Plaintiff's Response does not include any citation to the record for 15 of the 31 remaining paragraphs in Defendant's Facts, and those paragraphs should therefore be deemed admitted[3]. As discussed in the paragraph immediately above, a court is to deem admitted any facts in a summary judgment motion where a nonmoving party fails to cite record evidence in support of its objection.

The remaining 16 paragraphs addressed in Plaintiff's Response, and implied objections thereto, should also be disregarded for the following reasons, resulting in Plaintiff admitting the contents of each of those paragraphs:

| Para. No(s). of Objection | Reason for Disregarding Objection |
| --- | --- |
| 4 | Plaintiff identifies a document attached to its Opposition as Exhibit 1 that essentially supports Defendant's Paragraph 4 and identifies that Zueva and Dubyna (as Party 2 therein defined) essentially sold 50% of certain websites, excluding the Domain, to Khorsev and Ivankin (as Party 1 therein defined). See Opp., Ex. 1, Paragraphs 1, 2.1.2, 2.1.3, and 2.1.5. Plaintiff's Response to Paragraph 4 should be stricken and deemed admitted. |
| 9-13, 17 | As discussed *infra,* Plaintiff's Response to Paragraphs 9-13, and 17, should be stricken and deemed admitted. |
| 18 | While Plaintiff or the parties may have originally intended that the contract identified in Paragraph 18 be entered into between various parties in various capacities, the contract identified in Paragraph 18 speaks for itself in support of Paragraph 18 in Ex. 5 attached to the Memo. [DE 108-5], identifying only Khorsev and Dubyna as the parties. Plaintiff's Response to Paragraph 18 should be stricken and deemed admitted. |

[2] Specifically, Plaintiff does not object at all to the following paragraphs of the Facts: 1, 2, 3, 5, 7, 19, 21, 24, 26, 36, 38, 41-43, 45-47, and 49-50.

[3] Specifically, Plaintiff does not cite to the record in support of its Response to the following paragraphs of the Facts: 6, 8, 14-16, 23, 27, 29-33, 39-40, and 44.

| | |
|---|---|
| 20 | Defendant did not assert that the Domain can "hold" an advertisement, as Plaintiff contends. Rather, the undisputed facts illustrate that Google advertisements were placed on the Ukrainian Domain, as opposed to the Domain. Plaintiff's statement that "[e]ventually, as planned, the '.com' domain became the main address, where all other domains were pointing," is extremely misleading. Nowhere in the record supports Plaintiff's proposition that the Domain "planned" to be the main address. See Plaintiff's own citation, Opp. Ex. 13 (117:8-20), but see also Opp., Ex. 13 (104:4–105-1). The Domain only had content <u>after</u> the Ukrainian Domain was returned to Zueva and Dubyna, and any and all partnership of the Members of the LLC had broken down. A third party's use of the Domain subsequent to any involvement with Plaintiff is irrelevant to this action. Plaintiff's Response to Paragraph 20 should be stricken and deemed admitted. |
| 22 | Plaintiff asserts in support of its dispute to Paragraph 22 the same letter identified by Defendant in its Paragraph 22. See Memo Ex. 6, Opp. Ex. 14. Khorsev's letter is addressed in multiple depositions. Plaintiff intentionally ignores the depositions cited by Defendant as to Plaintiff's deposition as a corporate entity, Zueva's deposition, and Dubyna's deposition, and relies solely on a letter from Khorsev, one of the two individuals who initiated the instant suit. Plaintiff's Response to Paragraph 22 should be stricken and deemed admitted. |
| 25 | Plaintiff essentially admits to this Paragraph 25 and attempts to add facts that are wholly argumentative. Defendant did not assert the intention of Plaintiff. Plaintiff's Response to Paragraph 25 should be stricken and deemed admitted. |
| 28 | Plaintiff readily admits the existence of litigation in Ukraine. Any further commentary in Plaintiff's rebuttal to Paragraph 28 is intentionally vexing and harassing, irrelevant to the instant action, and should be stricken entirely. Plaintiff's Response to Paragraph 28 should be stricken and deemed admitted. |
| 34 | Plaintiff only addresses the first sentence in Paragraph 34 regarding the existence of a license. Defendant does not assert the type of license—granted, implied, oral, or expressed—and all testimony supports a license— implied, oral, or expressed. Plaintiff's Response to Paragraph 34 should be stricken and deemed admitted. |
| 35 | Plaintiff directs this Court to Docket No. 36 in support of its rebuttal allegations in Paragraph 35, which is a Motion to Stay Judgment filed by the original defendants in this action, and contains no exhibit. Given that the record is abundant in this matter, Defendant cannot properly address or ascertain what declaration Plaintiff is identifying or how it is attempting to characterize the evidence and in what context. Defendant reasserts its citations in support of Paragraph 36. Memo., p. 11, ¶ 35. Plaintiff's Response to Paragraph 35 should be stricken and deemed admitted. |

| 37 | Plaintiff attempts to misconstrue to this Court that Plaintiff intended to expand its services to the United States. It simply did not. In support of this proposition, Plaintiff cites principally the testimony of Ivankin, as Plaintiff's corporate representative, an alleged wrongdoer in this action and one of Plaintiff's Members, as well as a contract between Khorsev and Dubyna, which identifies only a payee for services obtained through the Ukrainian Domain. Regardless of any intent, Plaintiff simply did not expand its services to the United States with respect to the Domain. If anything, while Khorsev and Ivankin through their company 908, Inc. may provide services in the United States as unrelated to Plaintiff or Domain, Plaintiff's own citation to the deposition of Dubyna supports the allegation that Plaintiff did not expand or attempt to expand its services into the United States. Neither Plaintiff nor Dubyna nor Zueva have any interest in 908, Inc., and Plaintiff's Response to Paragraph 37 should be stricken and deemed admitted. |
|---|---|
| 48 | Plaintiff provides no support of why it could not be possible that of the impressions generated in the United States, most, if not all, could be generated by VPN. If anything, Defendant's position is further supported by the de minimis revenue generated. See Memo., p. 14, ¶ 49. Plaintiff's Response to Paragraph 48 should be stricken and deemed admitted. |

As discussed above, Plaintiff generally admits to the Facts, and, even when it does not, it inserts facts irrelevant to U.S. conduct or this action, and fails to identify any *material* dispute of fact.[4]

Rather than identify how the U.S. marketplace perceives an alleged U.S. trademark of Plaintiff and any rights it may have associated therewith, Plaintiff contests who is entitled to ownership of the Domain, which essentially amounts to a claim of embezzlement or conversion. *See* Paragraphs 9-17 of the Facts and Responses related thereto. To summarize, the only dispute,

---

[4] Engagement of Mr. Trofimenko or Mr. Mishalov and subsequent determination of legal relationship between mMmbers of the LLC in Ukrainian courts are neither material nor relevant to the ACPA claim before the Court. The Court should give no credit or weight to baseless, scandalous, and irrelevant dramatic statements by Plaintiff regarding Ukrainian litigations between the Members of the LLC, which are aimed to deflect the Court's attention from lack of evidence in support of Plaintiff's claims to purported ownership of common law trademark rights in the United States.

which is not otherwise a material fact in dispute in support of a claim under the ACPA for the reasons discussed *supra*, is over the meaning of the January 30, 2013 Email from Mr. Ivankin to Mr. Dubyna (the "<u>Email</u>") – an Email that Plaintiff failed to produce during discovery.

As an initial matter, it bears mentioning that pursuant to Federal Rule of Civil Procedure 37, a party who fails to comply with the disclosure requirements of Rule 26(a) or the supplementation requirement of Rule 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see e.g., Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). As such, the Email is likely not admissible into evidence by Plaintiff. Nevertheless, Defendant will address the substance of the timeline that led to the purported Email as follows:

| | |
|---|---|
| November 2012 | Dubyna buys the Domain with his own money and with Ivankin's assistance. No documents are executed to evidence that the Domain is the property of the LLC. Plaintiff's argument that ownership of the Domain was initially evidenced by entering the corporate klumbiko@gmail.com email address in the WhoIS Database does not contradict Dubyna's testimony that later Plaintiff decided it did not need the Domain and specifically requested Dubyna to transfer registration of the Domain "somewhere else," which Dubyna did. |
| Nov. 2012 - now | Dubyna was never reimbursed for purchase of the Domain. Plaintiff introduced no documents or testimony to show otherwise. |
| January 30, 2013 | Ivankin asks that the Domain to be transferred elsewhere. [DE 108-5]. Notably, Plaintiff deliberately did not disclose that the Email in discovery nor does it dispute its authenticity. Rather, Plaintiff argues that Dubyna was supposed to transfer the Domain "somewhere else" but nonetheless register it to the LLC. This interpretation is inconsistent with testimony of both Dubyna and Plaintiff's 30(b)(6) representative, who testified that administration of the various LLC domains through the LLC's klumbiko@gmail.com were responsibilities of Ivankin, as the LLC's Technical Director. LLC Dep. at 83-84. If Ivankin (or Plaintiff) meant to keep the Domain and maintain it from the LLC's corporate account, it would have been Ivankin – who was administrating all other websites of |

LLC — who would have taken care of the transfer and payment of the renewal fee for the Domain. The fact that Ivankin indeed asked Dubyna to take care of the transfer and payment of the renewal fee is consistent with Dubyna's testimony that the LLC was not interested in keeping the Domain, did not want to reimburse Dubyna for paying money for the Domain and did not want to "bother" with it, and wanted Domain transferred "somewhere else" that was not an account of LLC when it was time to pay for the Domain's annual renewal. Dubyna Dep. at 120-122.[5] In other words, if LLC intended to keep the Domain, including, *inter alia*, for the purposes of operating in the United States, Ivankin would simply not have sent an Email to Dubyna about the transfer. Dubyna responded to Ivankin's Email that the Domain transfer was "in process." Had it not been Ivankin's intention to accept that response, Ivankin would have sent a follow up email saying something along the lines of "let me help" or "let me take care of it." Dubyna's answer was accepted and the only reasonable interpretation is that LLC did not want to keep the Domain, vis-à-vis, the fact it had no intention of operating under the Mark in the United States.

| | |
|---|---|
| January 30, 2013 | Dubyna transfers the Domain and pays $10 for the registration with hover.com from his personal funds. |
| November 2012 - November 2013 | Dubyna allows the Domain to be redirected to the Ukrainian Domain through, at most, an implied license terminable at any time. |
| September 16, 2013 | Khorsev, in his capacity as a director of the LLC, claims that he is taking control of all assets of the LLC, cutting Dubyna and Zueva off, and discontinuing paying them profits [DE 108-7]. |
| November 25, 2013 | Ukrainian Court returns the Ukrainian Mark and Ukrainian Domain to Zueva, and the Domain continues redirecting to the Ukrainian Domain. |
| Nov. 25, 2013 - Present | LLC conducts no further business activity other than Khorsev and Ivankin filing lawsuits against the two other Members of the LLC, Dubyna and Zueva, to "restore the assets that were stolen." |

---

[5] Mr. Dubyna testified as follows:

> Ivankin asks me to transfer the domain from the corporate address klumbiko@gmail.com because it was my personal domain and Oleksii Ivankin did not want to pay for it from corporate account.

Dubyna Dep. at 122:1-4.

| Spring 2014 | Mr. Cherkashyn, at Dubyna's request, transfers the Domain to his company-registrar and changes the privacy protection of publicly available personal information of the owner. |

As can be seen above, other than bare, unsupported statements that Plaintiff was entitled to the ownership of the Domain, Plaintiff's position is vastly unsupported: (i) there is no record or document of transferring the Domain to the LLC; (ii) no record or document showing that the LLC paid for the Domain or its registration; (iii) no document that the LLC reimbursed Dubyna for purchase of the Domain; and (iv) no document evidencing operation of the Domain by the LLC at any point. The November 2012 Skype communications between Ivankin and Dubyna only show that Ivankin assisted Dubyna in purchasing the Domain and the Email shows that Ivankin wanted the Domain transferred "somewhere else." The Email speaks for itself and the Court should not take Plaintiff's interpretation of events as creating a genuine dispute of material facts. Plaintiff bears the burden in showing that the Domain belonged to the LLC. The LLC offers nothing but "conclusory allegations, speculative scaffolding of one inference upon another, [and] the production of a mere scintilla of evidence" – to prove ownership – this is not sufficient "to forestall summary judgment." *Sook Yoon v. Sebelius*, 481 F. App'x 848, 849 (4th Cir. 2012) (internal citations omitted).

## IV.   PLAINTIFF CANNOT, AS A MATTER OF LAW, ESTABLISH THAT THE DEFENDANT DOMAIN IS LIABLE FOR CYBERSQUATTING UNDER THE ACPA

In large part, Plaintiff's Opposition is an attempt to convince this Court that this case is overly complicated and fact intensive, and therefore, cannot be resolved on summary judgment. It is not. Plaintiff simply has not provided a valid, factual or legal basis for its claim of cybersquatting. To establish a *prima facie* case of cybersquatting under the ACPA, a plaintiff must prove that the registrant both: (i) has a bad faith intent to profit from the plaintiff's

legitimate trademark; and (ii) registers, traffics in, or uses a domain name that is (a) identical or

confusingly similar to a distinctive mark, (b) identical, confusingly similar to, or dilutive of a

famous mark, or (c) one of an enumerated list of defined marks. *See* 15 U.S.C. § 1125(d)(1)(A).

### A. PLAINTIFF CONTINUES TO FAIL TO ESTABLISH EVIDENCE THAT IT HAD COMMON LAW TRADEMARK RIGHTS IN THE UNITED STATES

Plaintiff does not dispute that at no time was the Mark specifically marketed or known to

U.S. customers at large. Rather, Plaintiff argues that it established common law trademark rights

because it sold advertisement space on "Klumba domains" to a single party, Google, which was

the LLC's "primary customer" and "sole buyer of [LLC]'s good or services in the U.S. [sic]"

Opp., pp. 12-13 [DE 111]. Plaintiff's blithe reasoning gives short shrift to the requirement that to

establish a protected interest in an unregistered trademark in the U.S., an owner must show that

the mark is 1) used in commerce and 2) "distinctive among United States consumers."

*See Internat'l Bancorp, LLC v. Societe des Bains de Mer*, 329 F.3d 359, 363, 370 (4th Cir. 2003).

In the case of an operator of a search engine, such as Google, a mark is used in commerce

<u>where</u> "Google displays, offers, and sells [the] mark to Google's advertising customers when

selling its advertising services." *Rescuecom Corp. v. Google Inc*., 562 F.3d 123, 129 (2d Cir.

2009). Here, the situation is quite opposite. Google purportedly never advertised, sold, or

displayed the <u>Mark</u> to U.S. customers.  Rather, Google advertised <u>products of others</u> on the web

space of a Domain redirected to the Ukrainian Domain, located outside the United States, where

the Google code was placed. Case law is quite clear that such circumstance does not constitute

"use in commerce." (emphasis added). See e.*g., Lopez v. BigCommerce, Inc.,* No. 16-CV-8970

(JPO), 2017 WL 3278932, at *3 (S.D.N.Y. Aug. 1, 2017), appeal dismissed (Oct. 25, 2017)

(plaintiff failed to demonstrate use in commerce because it "has not identified any

advertisements using <u>his marks</u> from which [Google] received monetary benefit." (emphasis added).

Plaintiff was required to advertise its <u>own trademark to U.S. consumers</u> through Google or otherwise to achieve use in commerce – not provide space for other advertisers. Thus, no common law trademark rights were ever acquired by the LLC as to the Mark, or any known variation thereof, in the United States. For this reason alone, Defendant is entitled to summary judgment on Plaintiff's single claim arising under the ACPA.

### B. PLAINTIFF CONTINUES TO FAIL TO ESTABLISH EVIDENCE THAT DEFENDANT ACTED IN BAD FAITH

Establishing bad faith intent to profit is required for a successful claim under the ACPA. *See, e.g.*, *Lamparello v. Falwell*, 420 F.3d 309, 320 (4th Cir. 2005) (explaining that bad faith intent to profit is "essential to a successful cybersquatting claim"); *So. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1243 (11th Cir. 2009) (affirming grant of summary judgment where plaintiff "failed to show [defendant] had a 'bad faith intent to profit' as required by the statute"); *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 431 (S.D.N.Y. 2013) ("A finding of 'bad faith' is an essential prerequisite to finding an ACPA violation.") (internal quotation omitted).

In evaluating a claim of cybersquatting under the ACPA, courts focus on the registrant's subjective intent in registering the domain name, and whether the registrant had a "bad faith intent to profit <u>from that mark</u>." 15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added); *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 643 (E.D. Mich. 2001); *Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*, No. 13-cv-8458, 2015 WL 5311085, at *51-52 (C.D. Cal. Sept. 10, 2015) (contrasting "a generalized intent to profit with the ACPA's *bad faith* intent to profit off [plaintiff's] *specific marks*") (emphasis in original).

13

In its Opposition, Plaintiff asserts several, confusing and equally unsupported arguments, largely surrounding allegations of embezzlement and conversion in a vexatious and harassing manner, claims unpled in the Amended Complaint, in support of its argument that Defendant acted in bad faith with an intent to profit from its Mark in the U.S. under the ACPA in that:

(i) presumably[6] the registrant[7] did not have any rights in an ambiguously phrased "Klumba domains or any of the trademarks" (Opp., p. 14);

(ii) the registrant does not bear the name of the Domain (*Id.*, pp. 14-15);

(iii) the registrant did not engage in commerce in the United States under the Mark or had any rights to the Mark in Ukraine (*Id.*, p. 15);

(iv) the registrant engaged in commercial use of the Domain, without mention of use of the Mark or any trademark (*Id.*);

(v) the registrant diverted away the Domain's only customer, Google, without mention to any customer of Plaintiff (*Id.*, pp. 15-16);

(vi) the registrant offered to sell the Domain to other parties, without mention of whether such offering occurred before registrant's use of the Domain for a legitimate purpose (*Id.*, p. 16-17);

(vii) the registrant, or its agent, provided misleading information as to a non-existent entity (*Id.*, p. 17-18); and

(viii) the registrant registered similar domains such as "Kloomba.com", which were confusingly similar to the Mark (*Id.*, p. 18-19).

---

[6] Plaintiff makes no reference to the term registrant but rather argues that Defendant, *a res*, acted in bad faith.

[7] Defendant presumes Plaintiff to imply the registrant to be Dubyna and Zueva, jointly, or in some instances only Dubyna or Zueva based on the confusing arguments of Plaintiff.

Despite the confusing and somewhat cryptic allegations presented in Plaintiff's Opposition, the undisputed facts in this case show that Defendant did not have any *bad faith* intent to profit off of Plaintiff's *specific trademarks* (emphasis added). Specifically, addressing each of the allegations presented above, *seriatim*, Defendant, vis-à-vis, its registrant, presents the following rebuttal:

(i) Dubyna and/or Zueva, the presumed registrant, had rights to the Domain at all times related to this action as discussed *supra*, including, *inter alia*, evidenced though (a) Dubyna's purchase and maintenance of the Domain without financial recovery from the LLC, (b) Ivankin's request that the Domain be transferred "somewhere else" away from the LLC, and (c) Zueva's and Dubyna's original ownership of both the Ukrainian Mark and the Ukrainian Domain, evidenced by the Partnership Agreement, which were both returned to and presently held by Zueva as of November 2013, roughly two (2) years before this action was instituted;

(ii) Defendant is clearly identified by the Domain name, and whether or not the registrant is identified by name is irrelevant to this action as Ivankin, an authorized party of Plaintiff, specifically instructed Dubyna to transfer the Domain "somewhere else" without further inquiry to the identity of any end party;

(iii) Plaintiff readily admits that the registrant used the Domain name in connection with goods or services prior to it instituting the instant action;

(iv) Plaintiff makes no contention of the registrant's use of the Mark but rather only use of the Domain;

(v) Plaintiff makes no contention that the registrant diverted its customers, but

rather the Domain, nor does it contend that it is the owner of the Mark, which for the reasons discussed *supra*, Defendant contends it is not;

(vi) Plaintiff makes numerous vexatious and harassing commentary attacking the integrity of Dubyna and Zueva, which is wildly inappropriate, prejudicial, and irrelevant to this action regarding a prospective sale of the Domain, while only a few paragraphs earlier admitting the registrant's use of the Domain in connection with goods or services;

(vii) what information registrant, or its agent, provided in registration of the Domain is irrelevant to this action as Ivankin, an authorized party of Plaintiff, specifically instructed Dubyna to transfer the Domain "somewhere else" without further inquiry as to the identity of any end party; and

(viii) no Domain names were registered similar to any of Plaintiff's marks as Plaintiff has no rights and continues to have no rights in the Mark or similar variations thereof.

## V.   PLAINTIFF DOES NOT DISPUTE, AND THEREFORE, CONCEDES THAT SHOULD DEFENDANT PREVAIL, DEFENDANT IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES AND COSTS AGAINST PLAINTIFF, KHORSEV, AND IVANKIN, JOINTLY AND SEVERALLY

Plaintiff does not dispute, or otherwise address in its Opposition, Defendant's argument in its Memo that, should Defendant prevail, it is entitled to its reasonable attorneys' fees and costs, including, as discussed in Defendant's Memo, against Khorsev and Ivankin, jointly and severally. Memo., pp. 25-26. For the reasons discussed *supra* as to standing, Plaintiff therefore concedes the issue.

16

## VI.     CONCLUSION

WHEREFORE, the premises considered, Defendant respectfully prays that this

Honorable Court:

    a.   Grant this Motion and dismiss the Amended Complaint in its entirety with

      prejudice;

    b.   Release the Domain from escrow [DE 55] to be transferred to Zueva;

    c.   Award Defendant its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a),

      or alternatively this Court's inherent power, and under other applicable law,

      against Plaintiff, Khorsev, and Ivankin, jointly and severally; and

    d.   Award Defendant its costs pursuant to Rule 54(d), and under other applicable law,

      against Plaintiff, Khorsev, and Ivankin, jointly and severally.

Date: December 18, 2017          Respectfully submitted,


                         By Counsel


                         By:   __/s/  Robert Powers_____
                         Robert Powers, Esq.
                         MCCLANAHAN POWERS, PLLC
                         8133 Leesburg Pike, Suite 130
                         Vienna, VA 22182
                         Telephone: (703) 520-1326
                         Facsimile:  (703) 828-0205
                         Email: rpowers@mcplegal.com
                         *Counsel for Defendant*

                         Maria Temkin, Esq.
                         TEMKIN & ASSOCIATES, LLC
                         1700 Market Street, Suite 1005
                         Philadelphia, PA 19103
                         Telephone: (215) 939-4181
                         Facsimile:   (215) 914-6975
                         Email: maria@temkinlegal.com
                         *Pro Hac Vice Counsel for Defendant (Approved)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2017, the foregoing *document* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: <u>/s/ *Robert Powers*</u>
Robert Powers