**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **KLUMBA.UA, LLC** )<br>    Plaintiff, )<br>  )<br>        v.    )<br>  )<br>**KLUMBA.COM, a res** )<br>    Defendant. )<br>  ) | Case No. 1:15-cv-760 |

## MEMORANDUM OPINION

At issue on cross motions for summary judgment in this unusual Anti-cybersquatting Consumer Protection Act (ACPA)[1] case is whether plaintiff, a Ukrainian LLC, possesses common law trademark rights in the mark "Klumba" in the United States. Plaintiff argues that the *res* in this case, the domain name klumba.com, infringes on plaintiff's common law trademark rights and thus violates the ACPA. Two of the four members of the plaintiff LLC, acting on behalf of the *res*, argue that because plaintiff has not used its mark in commerce in the United States, plaintiff has no common law trademark rights in the United States, and hence plaintiff cannot bring a claim under the ACPA.

The matter has been fully briefed and argued, and is now ripe for disposition.

### I.

Of course, the entry of summary judgment is appropriate only where there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And that is precisely the situation presented here. Pursuant to Local Rule 56(B) and the Rule 16(b) Scheduling Order issued in this case, a motion for summary judgment must contain a separately

---

[1] 15 U.S.C. § 1125(d), *et seq.*

1

captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. *See Klumba.UA, LLC v. Klumba.com*, No. 1:15-cv-701 (E.D. Va. Sept. 20, 2017) (Order). Both parties complied with Local Rule 56(B) and the Scheduling Order and the following list of undisputed material facts is based on the parties' statements of undisputed material facts and their responses.

- Plaintiff, Klumba.ua, LLC, is a Ukrainian company that operates a Ukrainian website for the sale and exchange of children's clothing and goods. Plaintiff has four members: (i) Dmitry Dubyna, (ii) Natalia Zueva, (iii) Andrey Khorsev, and (iv) Aleksey Ivankin.

- The *res* at issue in this case, klumba.com, is a U.S. registered domain name currently registered to Klumba.com, LTD.

- In 2008, Dubyna and Zueva created a website using the name klumba.kiev.ua to serve as a platform for parents to sell and exchange children's clothing and goods for children.

- In June 2010, Zueva registered the trademark KLUMBA[2] in the Ukraine and registered the domain name klumba.ua (the Ukrainian domain name), which was linked to the trademark.

- In July 2010, Dubyna and Zueva began placing advertisements on the klumba.ua website using Google's AdSense Program.[3] Google sent the revenue generated from the advertisements to a Ukrainian address via paper check.

- In September 2010, Zueva and Dubyna joined with Khorsev and Ivankin to create Klumba.ua, LLC, the plaintiff in this case. As part of the new LLC venture, Zueva transferred ownership of the Ukrainian domain name, klumba.ua website, and the Klumba Mark in the Ukraine to plaintiff. The four members of plaintiff shared the profits from the website, including the profits generated via Google AdSense.

- In November 2012, Dubyna purchased the domain name klumba.com from a third party vendor for $2500.

- After purchasing the klumba.com domain name, Dubyna arranged to have traffic to the klumba.com domain name redirected to the klumba.ua website. Essentially, when users

---

[2] In English, the word "Klumba" translates to "flowerbed." The word "Klumba" is a transliteration of the actual trademark, which in Cyrillic appears as КЛУМБА.

[3] When a company or individual uses Google AdSense, the company or individual receives a code which it may add to the company or individual's website. This code imports advertisements from Google, and then, when a user clicks on an advertisement, the company or individual hosting the code receives a portion of the advertising revenue.

typed klumba.com into a browser, they were sent to klumba.ua where they could view the website's children's clothing and goods.

- In March 2013, Ivankin and Dubyna agreed to use a California corporation owned by Ivankin and Khorsev, 908, Inc., as a depository for proceeds from the Google AdSense Program.

- Pursuant to the agreement between Ivankin and Dubyna, Google's AdSense checks were deposited to 908, Inc.'s U.S. bank account, and then 50% of the monthly proceeds were to be paid to Dubyna in the Ukraine within five days of receipt.

- In spring 2013, a dispute arose among plaintiff's members over ownership in the Ukraine of plaintiff's intellectual property.

- In September 2013, Ivankin and Khorsev changed the passwords to all plaintiff's email and user accounts, and redirected traffic from the klumba.ua domain to klubok.com, a website under their sole control.

- Ivankin and Khorsev kept all revenue generated by the klubok.com website, and stopped paying profits to Zueva and Dubyna in October 2013.[4]

- Plaintiff has no registered trademark rights related to the Klumba mark in the United States.

- Plaintiff never marketed, promoted, nor planned to expand use of the Klumba mark in the United States. In 2012, Khorsev and Dubyna visited the United States to discuss starting a project similar to Klumba. The two met with some Americans and did some research to find out whether people knew or were familiar with the word Klumba. That research disclosed that the mark Klumba had no meaning to American consumers who were interviewed.

- The klumba.ua website has no English language content. All information on the website is in Russian or Ukrainian and goods and services advertised on the site are priced in the Ukrainian currency – Hryvnia.

- There are no U.S. customers registered in plaintiff's customer databases, and no goods hosted on plaintiff's klumba.ua have been sold to U.S. customers. There have been 1.5 million page views of the klumba.ua website in the United States, but there is no evidence that any of those page views came from U.S. citizens.

- Plaintiff's primary source of revenue was from Google's AdSense program. According to statistics from Google AdSense, plaintiff received less than 1% of its revenue from

---

[4] The parties have engaged in extensive litigation in the Ukraine over the ownership of the Klumba mark in the Ukraine as well as a number of Klumba-related domain names. This dispute even reached the Ukrainian Supreme Court. That conflict has since spilled over into the United States because of the existence of the klumba.com domain name.

advertisement generated from users accessing the klumba.ua website in the United States. In 2013, this U.S. revenue amounted to $880, compared to $147,000 in revenue from users accessing the klumba.ua website in Ukraine. Google Trends Reports shows that almost 100% of searches for "klumba" originated in Ukraine.

## II.

The summary judgment standard is undisputed and too well-settled to warrant extended discussion. In essence, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P. And it is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. On the other hand, a genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* And "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## III.

Plaintiff argues that neither Dubyna nor Zueva has standing to appear or file answer on behalf of the *res* in this case because the *res* was registered to a company, Klumba.com, LTD, not Dubyna or Zueva. Because this suit proceeded under the in rem provisions of the ACPA, 15 U.S.C. § 1125(d)(2)(a), the *res*, the klumba.com domain name, is the nominal defendant in this action. But the purpose of an in rem adjudication is to determine the interests of certain persons in that *res*. *Shaffer v. Heitner*, 433 U.S. 186, 197, 207 (1977) (citations omitted) ("[T]he phrase

4

'judicial jurisdiction over a thing' is a customary elliptical way of referring to jurisdiction over the interest of persons in a thing."). The claimants Zueva and Dubyna have "continuously taken the steps required . . . in order to come forward and argue [an] ownership interest in the *res*." *Saurikit, LLC v. cydia.com*, No. 1:11-cv-888 at *3 (E.D. Va. Apr. 17, 2012). Both have engaged in the discovery process and settlement negotiations, and both have asserted an interest in the klumba.com domain name throughout the litigation. Plaintiff's argument that Dubyna and Zueva have no interest in the klumba.com domain name is more appropriately addressed as a merits question, rather than as an argument that they are not adequate claimants of the *res* klumba.com.

## IV.

The central and ultimately dispositive question in this case is whether plaintiff can demonstrate that it has common law trademark rights in use of the Klumba mark in the United States.[5] If plaintiff cannot do so, plaintiff's claim fails, as the Fourth Circuit has held that "[a] prerequisite for bringing a claim under the ACPA is establishing the existence of a valid trademark and ownership of that mark." *Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004). Because the Klumba mark is unregistered, plaintiff cannot satisfy this ACPA requirement unless plaintiff can establish that plaintiff has common law trademark rights in the Klumba mark in the United States.

Importantly, unregistered or common law marks are entitled to protection under the ACPA. *Lamparello v. Falwell*, 420 F.3d 309, 311 (4th Cir. 2005) (quoting *PETA v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). But equally importantly, common law trademark rights are

---

[5] Defendant argues that the lack of common law trademark rights in the United States also deprives plaintiff of standing. Because this argument is the same as defendant's argument on the merits, both are addressed *infra*. Defendant also argues that plaintiff lacks the authority to bring the present case because a majority of the members did not approve of the lawsuit, but defendant cites no provision of Ukrainian law requiring majority approval for plaintiff to bring a claim. In any event, it is unnecessary to reach or decide the question whether plaintiff has the authority to bring this case because plaintiff cannot establish common law trademark rights in the United States.

acquired only through actual use of the mark in a given market in the United States. *Id.*; *see also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918). To establish the existence of a common law trademark right, a party must show that the mark is (i) used in commerce, and (ii) is distinctive among United States consumers. *Int'l Bancorp v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir. 2003). Plaintiff has not made that showing.

Plaintiff does not sell goods; instead it provides a service, namely the hosting of advertisements for children's clothing and goods. Therefore, plaintiff's mark is a servicemark under the Lanham Act. Section 1127 of the Lanham Act provides a specific definition of "use in commerce" as it relates to servicemarks:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, **a mark shall be deemed to be used in commerce** —
>
> ....
>
> (2) **on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce**, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.
>
> 15 U.S.C. § 1127 (emphasis added).

The Fourth Circuit has interpreted this definition to require a party to show that it (i) renders a service in commerce, and (ii) that a mark for the service so rendered is used or displayed in the sale or advertising of that service. *Int'l Bancorp*, 329 F.3d at 372. For a service to be rendered in commerce the service must either be performed in the United States or the service must involve "transactions between United States citizens and the subject of a foreign nation." *Id.* at 365. The Fourth Circuit has emphasized that the mere provision of a service to a U.S. citizen is insufficient to establish rights in an unregistered service mark; the mark itself must be used or displayed in the sale or advertising of the service to the U.S. citizen. *Id.* (noting that mere

6

advertising or renting space in the United States, disconnected from use of a service mark, was insufficient to establish common law trademark rights).

These principles, applied here, point persuasively to the conclusion that plaintiff has failed to establish the existence of any common law trademark rights in the Klumba mark in the United States. To begin with, plaintiff provides a service to users of plaintiff's klumba.ua website; it allows users to access a platform for the sale and exchange of children's clothing and goods, similar to eBay or Craigslist. The record makes clear that plaintiff did not provide *this service* in the United States or to United States citizens abroad as required by *Int'l Bancorp*. 329 F.3d at 365. Although plaintiff has presented evidence that persons in the United States accessed the Klumba website, mere access to the webpage is insufficient to establish that plaintiff provided any service to individuals accessing the website in the United States. or to establish that the Klumba mark was used in connection with any kind of business activity in the U.S. *See id.* at 365 (plaintiff must show "transactions between United States citizens and [] subject[s] of a foreign nation.").[6]

In sum, plaintiff has not identified a single U.S. citizen:

(i) who purchased anything using the plaintiff's website, klumba.ua,

(ii) who posted an advertisement for the sale or exchange of children's clothes or goods on the website, or

(iii) who otherwise used plaintiff's services.

To avoid this conclusion, plaintiff presents evidence of an alleged plan to expand to the U.S. market. This argument fails becasue expansion plans, without actual use in commerce, are insufficient to establish common law trademark rights. *See, e.g.*, *United Am. Indus., Inc. v.*

---

[6] *See also Maruti.com v. Maruti Udyog Ltd.*, 447 F. Supp. 2d 494, 499 (D. Md. 2006) (holding that the Maruti mark had not been used in commerce because "Maruti's mark applies to its cars, which are goods" and "Maruti's cars are not sold or transported in the commerce of the United States, not even the foreign commerce of the United States.").

*Cumberland Packing Corp.*, 2007 WL 38279, at *3 (D. Ariz. Jan. 5, 2007) ("[C]ourts have required more than an intent or threat to infringe in order to demonstrate 'use in commerce' under the Lanham Act. . . . Without more, these expressions of intention [by defendant] are insufficient to constitute 'use in commerce' as required by the Lanham Act.").[7]

Because plaintiff has presented no evidence that U.S. citizens, either in the United States or abroad, accessed the klumba.ua website for the purpose of using Klumba's clothing sale and exchange services, there is no evidence that Klumba has used its mark in commerce as required to establish common law trademark rights. *See Int'l Bancorp*, 329 F.3d at 365. Accordingly, without evidence that plaintiff used the Klumba mark in United States commerce, plaintiff cannot establish that it has any common law trademark rights in the Klumba mark in the United States, or that the klumba.com domain violates those rights.

Plaintiff next argues that its business relationship with Google via Google's AdSense program qualifies as use of the mark in commerce, and that plaintiff uses its Klumba mark in connection with plaintiff's business with Google. Google's AdSense "is an advertising program; Google pays participating merchants to host third-party ads on their websites." *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 820 (9th Cir. 2007). Plaintiff's business in this respect is "the cyberspace analogue of renting out space on your land for a billboard" because plaintiff sold advertisement space on plaintiff's website to Google. *Id.*

It is of course undisputed that plaintiff sold space to Google, but that alone is insufficient to establish that plaintiff used the Klumba mark in United States commerce for as the Fourth Circuit has made clear, the fact that plaintiff provided a service to a U.S. citizen is not enough to

---

[7] *See also Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 539 (D. Vt. 2001) (finding intent to use application was not sufficient to satisfy use in commerce requirement); *Cognitest Corp v. Riverside Pub. Co.*, 1995 WL 382984, at *2 (N.D. Ill. June 22, 1995) (finding the complaint failed to allege "use in commerce" where the complaint alleged only that defendant planned to present a product at a meeting in the United States)

8

establish common law trademark rights in the United States; instead, plaintiff must also show that the "mark for that service [was] being used or displayed in the sale or advertising of that service." *Int'l Bancorp*, 329 F.3d at 372. For example, in *Int'l Bancorp*, it was undisputed that plaintiff maintained an office in the U.S., advertised in the U.S., and hosted a promotional website for its services that could be accessed in the U.S. *Id.* at 364. Still, the Fourth Circuit held that these activities in the United States were insufficient to establish common law trademark rights because "[t]he Lanham Act and the Supreme Court . . . make clear that a mark's protection may not be based on 'mere advertising' " *Id.* at 365.

Just as in *Int'l Bancorp*, there is no evidence in this record showing that the Klumba mark was used in connection with the sale or even the advertising of plaintiff's "service" to Google. On this record, there is no evidence that Google knew of the Klumba mark, or that the mark was associated with the advertising space service Klumba provided. In fact, given that Google has a number of advertising partners whose websites vary widely in content there is no reason to believe that plaintiff's Klumba mark is *in any way* associated with the advertising space service provided to Google. The Klumba mark is not used to market plaintiff's services to Google; rather, plaintiff solicited Google for the code necessary to host Google's advertisements on its website as a means for plaintiff to monetize its user base. The Klumba mark is not used to brand plaintiff's advertising space services to Google because the mark is not used or displayed to Google in plaintiff's efforts to sell advertising space. There is simply no evidence in this record that the Klumba mark has any meaning for Google or that the Klumba mark was used as a means of attracting Google to purchase advertising space. And even if there were, a single transaction with a single U.S. company is not the kind of "deliberate and continuous" use of a mark necessary to establish common law trademark rights. *Larsen*, 151 F.3d at 146 (holding that sale

of 11,000 decorative CD holders in the United States bearing the plaintiff's mark was deliberate and continuous use). Thus, the hosting of advertising space for Google on plaintiff's Ukrainian web page does not provide a sufficient basis for concluding that plaintiff engaged in "deliberate and continuous" use of the mark in the United States necessary to establish common law trademark rights. Accordingly, plaintiff has failed to establish that it has used the Klumba mark in its transactions with Google in such a way as to give rise to common law trademark rights.

In sum, plaintiff does not use the Klumba mark in U.S. commerce within the meaning of the Lanham Act. Therefore, plaintiff cannot establish common law trademark rights in the United States. Although the Klumba mark is undoubtedly used in connection with plaintiff's children's clothing services, there is no record evidence showing that U.S. citizens utilized these clothing services. And although plaintiff has established that it has business ties with Google, it has not established that it uses the Klumba mark to brand its advertising space services or to market to Google. Because plaintiff has failed to establish that it has any common law trademark rights in the Klumba mark in the United States, plaintiff's ACPA claim fails and summary judgment in favor of defendant must be granted.

## V.

Defendant also argues that it should be awarded fees as the prevailing party. In trademark infringement cases, courts may award reasonable attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a); s*ee also PETA*, 263 F.3d at 370. Pursuant to § 1117(a), a case is "exceptional where a party's conduct was "malicious, fraudulent, willful or deliberate in nature." *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1991). Where an alleged infringer is the prevailing party, it can qualify for award of attorneys' fees upon a showing of "something less than bad faith" by the plaintiff. *Id.* at 599. According to the Fourth

Circuit, "pertinent considerations for judging a plaintiff's . . . conduct when the defendant prevails include 'economic coercion, groundless arguments, and failure to cite controlling law.'" *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004) (quoting *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144–45 (4th Cir.2000)).

This case does not warrant the award of attorneys' fees. To begin with, given the contested status of the Klumba mark in Ukraine, it was not frivolous for plaintiff to believe it may hold common law trademark rights in the United States. This is particularly so given the open questions about the availability of common law trademark rights in the United States based on Internet commerce. Very few cases address the issue,[8] and plaintiff did not demonstrate bad faith or even "something less than bad faith" in bringing its lawsuit against the *res*. *Scotch Whisky Ass'n*, 958 F.2d at 599. Plaintiff cited controlling law, and appears to have made its argument in good faith. The parties also engaged in settlement negotiations, and there is no indication that plaintiffs attempted to coerce a settlement. Accordingly, because plaintiff's claims were not "so lacking in merit that the action a whole was 'exceptional,'" attorneys' fees are not appropriate in this case. *Retail Servs.*, 364 F.3d at 551.

In sum, plaintiff cannot maintain an ACPA claim if it cannot establish common law trademark rights in the mark "Klumba" in the United States. *Lamparello*, 420 F.3d at 311. Because this record establishes that plaintiff did not use the Klumba mark in commerce within the meaning of the Lanham Act, plaintiff cannot establish common law trademark rights in the United States, and therefore plaintiff's ACPA claim fails, and summary judgment in favor of the *res* must be granted.

---

[8] *See Int'l Bancorp v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir. 2003); *Maruti.com v. Maruti Udyog Ltd.*, 447 F. Supp. 2d 494 (D. Md. 2006).

An appropriate Order shall issue.

Alexandria, Virginia  
June 8, 2018

_____/s/_____  
T. S. Ellis, III  
United States District Judge